IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM WHITE, | ) |
| | ) |
| Plaintiff, | ) 2:17-cv-00998 |
| | ) |
| v. | ) Chief Judge Mark R. Hornak |
| | ) |
| BEAVER COUNTY, | ) |
| | ) |
| Defendant. | ) |

**OPINION**

Before the Court is Plaintiff's Motion for an Award of Fees and Costs, filed pursuant to the Fair Labor Standards Act. (ECF No. 118.) This matter has been fully briefed and for the reasons stated herein, the Motion at ECF No. 118 is GRANTED in part, in that the Plaintiff is awarded $26,461.50 in counsel fees.

**I. BACKGROUND**

Plaintiff, William White, was hired by the Beaver County Office on Aging in 2002 and the County continuously renewed its contract with Mr. White through May 23, 2017. (ECF No. 1, at 2.) After their contractual relationship ended, Mr. White filed a Complaint in the above-captioned matter, asserting five (5) causes of action: (I) failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"); (II) failure to enroll Plaintiff in, and contribute funds to, a pension fund on behalf of the Plaintiff in violation of the Pennsylvania County Pension Act; (III) failure to make contributions to Social Security and Medicare in violation of the Federal Insurance Contribution Act; (IV) failure to make Unemployment Compensation payments in violation of the Pennsylvania Unemployment Compensation Law; and (V) failure to make the County's medical insurance available to the Plaintiff in violation of the parties' contractual

1

agreement. (*Id.* at 5–9.) Counts III through V were dismissed by the Court on January 26, 2018, leaving Counts I and II before the Court, as limited by the applicable statute of limitations. (ECF No. 10.)

Prior to proceeding to trial, the parties engaged in settlement negotiations. The case did not settle, but shortly before trial, the Defendant tendered a $4,114 Rule 68 Offer of Judgment to Plaintiff, solely as to the FLSA claim. That Offer of Judgment was made by the Defendant on January 17, 2020. (ECF No. 121, at 2.) Settlement negotiations remained unfruitful, and the parties proceeded to trial as to all claims in early February 2020.

As to the FLSA claim specifically, the parties stipulated that the jury need only determine two (2) issues. (ECF No. 93, at 1–2.) First, the jury was to determine whether Mr. White was an "employee" of the County, an issue that fundamentally overlapped in most material respects with the identical issue relative to his state law pension claim. And second, if Mr. White was an "employee," the jury would need to determine whether the County "willfully violated the mandates of the FLSA." (*Id.*) In addition, the parties stipulated to the potential FLSA damage award if the jury found that Mr. White was an "employee" of the County: (1) $3,926.50 if the County's actions were willful; and (2) $2,342 if the County's actions were not willful. (*Id.*)

On February 6, 2020, the jury found that Mr. White was an "employee" of Beaver County, but did not find that the County willfully violated the FLSA. (ECF No. 111.) Accordingly, Mr. White was awarded $2,342 in stipulated damages as to the FLSA claim. Now, counsel for the Plaintiff, Mr. Newborg, moves for an award of fees and costs consistent with the fee shifting provisions of the FLSA.

## II. DISCUSSION

Pursuant to the FLSA, a plaintiff who is successful at trial is entitled to recover reasonable attorney's fees and costs. 29 U.S.C. § 216(b). The issuance of any such award is within the discretion of the district court. *Musa v. Soar Corp.*, No. 13-2847, 2015 WL 619615, at *2 (E.D. Pa. Feb. 12, 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). And a district court similarly "retains a great deal of discretion in determining the amount of the award." *Id.* (citing *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 721 (3d Cir. 1989)).

Our Circuit recently confirmed that district courts are to apply the "lodestar-then-*Johnson* factors" approach when calculating such fee awards. *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 128 (3d Cir. 2017). First, as the name of the approach implies, the district court is to calculate the lodestar amount: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Id.*

Then, the district court may consider the twelve (12) factors set forth in *Johnson v. Georgia Highway Express*, *Inc.*, 488 F.2d 714 (5th Cir. 1974), and whether deviation from the lodestar calculation is appropriate in light of those factors. *See Souryavong*, 872 F.3d at 128 (stating that consideration of the *Johnson* factors "is permissible on the back end of a lodestar's calculation, as long as they are not already subsumed in the lodestar calculation").

The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the

3

professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

### A. Lodestar Calculation

As noted above, the Court will begin by calculating the lodestar amount: multiplying the number of hours Mr. Newborg reasonably expended on the litigation by a reasonable hourly rate.

#### 1. Number of Hours

In calculating the "time reasonably expended, a district court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Farris v. Nat'l Forensic Consultants, Inc.*, No. 18-cv-3052, 2019 WL 2502267, at *5 (E.D. Pa. Apr. 24, 2019). "[A] fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Phila. Cty. Ct. Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996).

Here, the parties have essentially stipulated to the fact that Mr. Newborg expended 104.76 hours with respect to the FLSA claim included in the above-captioned matter.[1] In the filing at ECF No. 118, counsel for the Plaintiff claimed that he expended 137.26 hours as to the FLSA claim. (*See* ECF No. 118, at 2.) The Defendant, however, argued that certain additional tasks were to be excluded from the lodestar calculation: (1) 10.7 hours for work on the Motion to Dismiss, which the parties limited to the pension claim; (2) 18.4 hours for work on the Motion for Summary Judgment; (3) 2.4 hours for work on the amended complaint; and (4) 1 hour for time spent on the expert report. (ECF No. 121, at 5–9.) Counsel for the Plaintiff then conceded the subtraction of those hours. (ECF No. 122.) As such, both parties agree that the total number of hours at issue and properly within the lodestar calculation is 104.76 hours.

---

[1] Mr. Newborg only seeks fees related to the FLSA claim at Count I of the Complaint. (ECF No. 118, at 2.)

And the Court agrees that upon its examination and consideration of the fee petition, those 104.76 hours were reasonably expended for each of the purposes described, and are not excessive, redundant, or otherwise unnecessary. In reviewing Mr. Newborg's specific itemized list of hours expended, the Court finds that Mr. Newborg consistently worked on the above-captioned matter from June 2017 until the conclusion of trial in early February 2020, with most tasks taking less than thirty (30) minutes. (*See* ECF No. 118-2.) All tasks were completed by Mr. Newborg personally, and Mr. Newborg (in specifically describing the legal services provided) did not include in his itemization claims for clerical tasks or other non-billable work.

Thus, the Court will include 104.76 hours in its lodestar calculation, as being both reasonable and representing work that was reasonably necessary to prosecute the Plaintiff's FLSA claim.

### 2. Reasonable Hourly Rate

Next, the Court must assess whether Mr. Newborg's asserted hourly rate is reasonable. A reasonable hourly rate is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," and the Court should assess "the experience and skill of the . . . attorney[] and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).

A district court, however, "may not set attorney's fees based on a generalized sense of what is usual and proper but must rely upon the record." *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001) (quoting *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997)). As such, "[t]he plaintiff bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal

5

services rendered in order to make out a prima facie case." *Id.*; *see also Stadler v. Abrams*, No. 13-cv-2741, 2018 WL 3617967, at *2 (D.N.J. July 30, 2018) ("This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience.").

Here, Mr. Newborg submitted a rate of $300 per hour (ECF No. 118-2), which he supported by statements from six (6) local attorneys (ECF No. 124). Most notably, the declaration of John Stember (an attorney who has "represented clients in employment and labor litigation in Western Pennsylvania since 1976") states that a rate of $300 per hour is low for an attorney with the "number of years of experience of John Newborg, and that $450.00 to $650.00 per hour is a more appropriate fee range for an attorney with [such] skill and experience, in an employment case in Western Pennsylvania." (ECF No. 124-4, at 1–2.)

This sentiment was bolstered by Melvin L. Vatz, whose declaration states that Mr. Newborg's requested fee of $300 per hour "is certainly on the lower end of fees charged by plaintiff employment lawyers in" the Western District of Pennsylvania. (ECF No. 124-5, at 1.) Additionally, Mr. Vatz notes that "[a]n hourly rate of $250.00 to $350.00 per hour would be reasonable for attorneys with far less experience than Attorney Newborg, and higher fees would be entirely reasonable for an attorney with the knowledge and experience of Attorney Newborg." (*Id.* at 1–2.). The Court would also observe from its nearly thirty (30) years of experience in practicing labor and employment law overwhelmingly in this District, and from its nearly nine years on this Court, that both Mr. Stember and Mr. Vatz are long-time practitioners in that same area of the law, and that the assertions in their declarations are both credible and logical.

These statements of reasonableness are also consistent with the findings of other courts within this Court's jurisdiction, both recently and more distantly. *See, e.g.*, *J & J Sports Prods.,*

*Inc. v. Maglietta*, No. 17-1960, 2019 WL 6907400, at *2 (E.D. Pa. Dec. 18, 2019) (finding $300 to be a reasonable hourly rate for an attorney practicing law for over twenty-four (24) years); *Chaney v. HVL, LLC*, No. 11-0833, 2012 WL 5990124, at *2 (W.D. Pa. Nov. 30, 2012) (finding $300 to be a reasonable hourly rate for an experienced employment law attorney).

Based on the declarations provided by Mr. Newborg, as well as the conclusions of other courts within this Court's jurisdiction, the Court finds that a rate of $300 per hour is reasonable and appropriate for an attorney in Mr. Newborg's position, one who has over forty (40) years of relevant experience.[2] And, similar to the declarations of Mr. Stember and Mr. Vatz, this Court similarly finds that Mr. Newborg's requested hourly rate of $300 is at the lower end of what could be sought in this case and will base its calculations on that hourly rate.

### 3. The Calculation

As such, in applying a rate of $300 per hour to the 104.76 hours expended in this case, the lodestar calculation amounts to $31,428.00.

### B. Adjustments to the Lodestar Calculation

Next, in accordance with the Third Circuit's holding in *Souryavong*, the Court is to determine whether deviation from the lodestar calculation is appropriate. Importantly, however, a district court "cannot decrease a fee award based on factors not raised at all by the adverse party." *Mantz v. Steven Singer Jewelers*, 100 F. App'x 78, 81 (3d Cir. 2004).

Here, the Defendant argues that the lodestar calculation should be adjusted downward for two (2) reasons: (1) Plaintiff's rejection of the Defendant's January 17, 2020, Rule 68 Offer of Judgment; and (2) the straightforward nature of the FLSA claim (which is a reiteration of several of the *Johnson* factors listed above). The Defendant notes that all other *Johnson* factors are either

---

[2] The Court's finding is also supported by the fact that the Defendant has not provided any argument in response or opposition to Mr. Newborg's requested hourly rate, as supplemented by the filing at ECF No. 124. (ECF No. 126.)

7

subsumed by the lodestar calculation, or that there is no evidence to support the Court's consideration of the remaining factors. (ECF No. 121, at 12.) As such, the Court will only consider reductions as raised by the Defendant.

### 1. Rejection of the Rule 68 Offer

First, counsel for the Defendant argues that Plaintiff's rejection of the Rule 68 Offer as to the overtime claim (made on January 17, 2020, in the amount of $4,114) is greater than the judgment obtained as to the overtime claim ($2,342) and as such the Court should reduce the lodestar amount to account for Mr. Newborg's limited success at trial.

"The Third Circuit has held that settlement negotiations and Rule 68 Offers are a permissible factor for consideration in awarding attorney fees, and that courts may consider the amount in a rejected settlement offer to the amount ultimately awarded by the jury as an indication of the success in the litigation as a whole." *Souryavong v. Lackawanna Cty.*, 159 F. Supp. 3d 514, 540 (M.D. Pa. 2016) (citing *Lohman v. Duryea Borough*, 574 F.3d 163, 167–69 (3d Cir. 2009)).

And other courts have held that "[w]hen a plaintiff rejects a Rule 68 offer and judgment is obtained for less than that offer, those "circumstances *must* be considered by the district court in determining what [attorney's] fee is reasonable." *Id.* at 520–21 (citing *Haworth v. State of Nev.*, 56 F.3d 1048 (9th Cir. 1995)); *see also Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1325 (M.D. Fla. 2001) (explaining that when a Rule 68 Offer is rejected, the reasonableness of an attorney fee award under the FLSA will depend on the court's consideration of the results the plaintiff obtained by going to trial compared to the Rule 68 Offer).

For example, the court in *Mogilevsky v. Bally Total Fitness Corporation* factored in a rejected Rule 68 Offer by reducing the award of attorney's fees by half for any work done after the offer was presented:

> Of the 764.2 hours Mogilevsky claims for work excluding the fee petition, 292.7 hours were devoted to work performed after Bally's Rule 68 Offer of Judgment. Thus, work performed after the offer represents 38.3% of the total. Mogilevsky proposes a 50% reduction of Shapiro's hours incurred after the Rule 68 offer, and the Court adopts his suggestion. Consequently, the Court will reduce the calculated lodestar amount by 19.15% to account for Mogilevsky's failure to realize a judgment more favorable than Bally's Rule 68 offer.

311 F. Supp. 2d 212, 221 (D. Mass. 2004).

Here, the Court similarly finds that the lodestar calculation in this case should be reduced on the basis that Mr. Newborg's client was less successful monetarily as to the FLSA claim by going to trial rather than accepting the Offer of Judgment, as late-breaking as it was. The Court, however, will only apply such reduction to the hours that Mr. Newborg spent on the FLSA claim *after* the Rule 68 Offer was presented to his client. And that specific portion of the lodestar amount will be reduced by the same proportion that the client's award amount was diminished based on his rejection of the Rule 68 Offer (as counseled by Mr. Newborg).

Prior to going to trial, Mr. Newborg's client could have received $4,114 as to the FLSA overtime claim—the amount of the Rule 68 Offer. At trial, however, based on the interaction of the damage stipulation of the parties, and the jury's verdict, the Plaintiff was awarded $2,342 as to his FLSA claim, which is roughly 57% of the Rule 68 Offer. In other words, by taking this case to trial, Mr. Newborg was in effect 43% "ineffective" as to the monetary value of the FLSA overtime claim.

In considering the Plaintiff's decreased award amount at trial as "an indication of the success in the litigation as a whole," the Court will likewise award Mr. Newborg only 57% of the

requested fee amount as to the FLSA overtime claim as to the work performed on such claim after the Offer of Judgment was presented to the Plaintiff. *Souryavong*, 159 F. Supp. 3d at 540. The Court will only apply this reduction to the tasks completed after the Rule 68 Offer was presented to Mr. Newborg's client because Mr. Newborg and his client had no guarantee (or on the record before the Court, even an inkling) before that time what his client might sacrifice by going to trial on the FLSA claim.

The long and short of it is that the Defendant waited until just about the last minute before making its Rule 68 Offer. While the Court's adjustment to the fee petition request will account for the fact that the Plaintiff did not do as well with the jury as if he had taken the Offer of Judgment, the Court will not further discount the fee petition to carve out work done before the Plaintiff and his lawyer had that Offer in hand. After all, the Plaintiff had to be ready to go to trial, and his lawyer had to do the work necessary to do just that, legal work which was essential to prosecute both of the Plaintiff's claims.

Mr. Newborg spent 38.5 hours as to the FLSA overtime claim after the Rule 68 Offer was presented (*see* ECF No. 118), which totals $11,550 based on a rate of $300 per hour. Mr. Newborg should only receive 57% of that segmented amount ($6,583.50), and as such, $4,966.50 should be subtracted from the lodestar calculation, which brings the total down to $26,461.50.

### 2. <u>Other Adjustments</u>

Next, counsel for the Defendant argues that "this case was a rather typical FLSA wage and overtime case," and as such, a particularly "high" fee award is not appropriate. (ECF No. 121, at 12.) The Supreme Court has held that in determining what constitutes a reasonable fee award, "the most critical factor is the degree of success obtained." *Wales*, 192 F. Supp. 2d at

1326 (citing *Hensley*, 461 U.S. at 436). And "while appellate courts have regularly considered percentage reductions in the lodestar, no case has been cited, or found, which sets forth guidelines for deciding the amount of the percentage that should be employed." *Id.* at 1327.

As to this point, the Defendant appears to argue that what it believes to be the apparent degree of effort exerted by Mr. Newborg as to the FLSA claim should be further factored into the Court's calculation of the fee award. Specifically, the Defendant insinuates that the fee award should be further reduced to account for the fact that "[t]here is no assertion that the case at bar was particularly demanding or complex, nor was the skill requisite to perform the services here particularly rigorous or demanding." (ECF No. 121, at 12.)

In the Court's estimation, however, the Plaintiff prevailed across the board as to the "big issues" in this case, and that can all be chalked up to the time and skill that Mr. Newborg brought to this matter for almost three (3) years. Importantly, as to the Plaintiff's FLSA claim (and, as it turned out, as to his pension claim) the jury found that he was in fact an "employee" under the law, and therefore he won at trial. That was not something to which the Defendant stipulated, and that was the whole reason the case went to trial. So, on the big issue central to the case, the Plaintiff prevailed across the board. That he did not recover the higher stipulated damages amount of $3,926.50 on his FLSA claim was only because the jury did not find a willful violation. But, in terms of success on the issue central to the case, and central to the FLSA claim, the Plaintiff was the winner.

Accordingly, and for the additional reasons listed below, the Court concludes that any further reduction at this stage would be both inappropriate and improvident, and duplicative of the reduction noted above. First, the Offer of Judgment and subsequent stipulation came very late in the game, and very close to trial. Most of the pretrial work was already complete at that point,

and the nature of the claims advanced by the Plaintiff resulted in considerable overlap in the factual proof to be marshaled and the legal arguments to be made, since the central issue on both claims in the case was whether the Plaintiff was an "employee" or an "independent contractor." The necessary legal work was work that in fact needed to be done for the Plaintiff to pursue his FLSA claim at trial, and as noted above, the lodestar amount is focused only on the legal work as to the FLSA claim.

Second, in the Court's experience, few cases that go to trial in a federal district court are, or should be, classified as "simple." There is good reason for the time-honored axiom that people may not want to "make a federal case" of something. Thus, the Defendant's admonition that this was really a "simple" case rings hollow, especially because the County was adamant about taking all claims against it to trial until the eleventh hour. In the Court's experience, the FLSA and its attendant regulations and decisional law are among the more complex in the field of employment law, the proof and arguments to be made quite nuanced, and its application very case-specific. Contrary to the tenor of the Defendant's argument, there is no statutory or case-law requirement that a prevailing plaintiff's legal effort be especially muscular before a plaintiff may receive the reasonable fees their counsel earned in doing the necessary legal work.

The Defendant had plenty of opportunities to bail out of the case all along the way by simply paying the Plaintiff the overtime on which it was ultimately willing to take a judgment. And had it done so, it would have taken the risk of any fee award out of the case, since there was apparently no fee shifting provision as to the Plaintiff's state law pension claim. But within its rights it elected to not do any of that. In those circumstances, it cannot at the end of the day, being on the losing end of a FLSA jury verdict, ask this Court to toss aside huge portions of the work that the Plaintiff's lawyer had to do to get to that point on the grounds it now presents. And

the Court is similarly unconvinced that Mr. Newborg should be paid less for his work because the final dollar amount awarded on the FLSA claim was not as large as what the Defendant was belatedly willing to concede that it owed if the jury found the Plaintiff to be an "employee" of the County. While the Defendant was within its rights to take the case to trial, it elected to roll the dice on the one (1) claim in the case that provided for fee shifting, so it cannot complain after the fact when that shifting occurs.

The Court has already reduced the fees claimed based on the Rule 68 Offer of Judgment, and in the Court's estimation any further reduction would be improvident for the reasons noted above, and would result in an unnecessary "double hit" to the fees claimed for legal work that had to be done (remember, the Defendant did not assert that the remaining FLSA hours noted above were excessive or unnecessary). In addition, doing so would be contrary to the purposes of the FLSA's fee shifting provision—namely, to provide a means for workers to obtain the assistance of competent and experienced legal counsel to assist in vindicating their rights under the FLSA. The Plaintiff needed a federal court jury trial to do that, and he needed the assistance of experienced counsel in that endeavor. The FLSA says that the reasonable costs of those legal services are to be shifted to the Defendant when the Plaintiff proves his case. And based on the record before the Court, Mr. Newborg's legal work is not the exception to that rule.

All other *Johnson* factors are either inapplicable or have been subsumed by the lodestar calculation. Thus, the above-listed calculation (totaling Mr. Newborg's fee award at $26,461.50) concludes the Court's application of the "lodestar-then-*Johnson* factors" approach.

### III. **CONCLUSION**

Based on the foregoing, the Plaintiff's Motion at ECF No. 118 is GRANTED in part, in that counsel for the Plaintiff is awarded $26,461.50 in counsel fees pursuant to § 216(b) of the Fair Labor Standards Act. An appropriate Order will follow.

                                       s/ Mark R. Hornak
                                       Mark R. Hornak
                                       Chief United States District Judge

Dated: July 9, 2020
cc:     All counsel of record